UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| CHASITY A. TRAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:23-CV-171-SNLJ |
| | ) |
| CAROLYN COLVIN,[1] | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

The Commissioner of the Social Security Administration denied plaintiff Chasity Travis's application for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act. Plaintiff now seeks judicial review. The matter has been fully briefed. As discussed below, this Court will REVERSE and REMAND the Commissioner's decision for further proceedings in accordance with this order.

---

[1] Carolyn W. Colvin is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Commissioner Martin O'Malley as the defendant in this suit.

1

I.      **Procedural History**

Plaintiff Travis was born in 1975. She alleges disability since October 1, 2016. Plaintiff's claims were initially denied, and, on December 5, 2022, following a hearing, the Administrative Law Judge ("ALJ") found plaintiff was not under a "disability" as defined by the Act. The ALJ determined that plaintiff had severe impairments that included lumbar degenerative disc disease with a history of fusion, degenerative disc disease of the cervical spine, osteoarthritis of the left hip, asthma, obesity, and an anxiety disorder. However, the ALJ found she did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. part 404, subpart P, appendix 1.

The December 5, 2022 ALJ decision was in response to a remand order by the Appeals Council that reversed the ALJ's May 26, 2021 decision. The Appeals Council ordered the ALJ to clarify two aspects of his May decision. The May decision stated that plaintiff would need to change positions for a few minutes every hour but did not specify the frequency of the need to change positions nor the length of time needed to remain in the alternate position.  The Council also asked the ALJ to address whether the claimant needed a hand-held assistive device to stand.

Plaintiff appeals the December 5, 2022 decision.

2

## II.     Disability Determination—Five Steps

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental

3

ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d), 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(3)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i), 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotations omitted); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical

4

opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Bladow v. Apfel*, 205 F.3d 356, 358–59 n.5 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III. The ALJ's Decision

At Step One, the ALJ found plaintiff met the insured status requirements through the relevant period, and he had not engaged in substantial gainful activity since April 3, 2018, the alleged onset date. At Step Two, the ALJ found plaintiff suffers from the following severe impairments: lumbar spine degenerative disc disease, status post L5-S1 fusion; mild bilateral hip arthropathy; mild multilevel endplate thoracic degenerative changes; depression; and anxiety.  [Tr. 15.]

At Step Three, the ALJ concluded plaintiff does not have an impairment or combination of impairments that meets or equals one of the presumptively disabling impairments listed in the regulations. However, the ALJ concluded plaintiff has the following severe impairments: lumbar degenerative disc disease with a history of fusion, degenerative disc disease of the cervical spine, osteoarthritis of the left hip, asthma, obesity, and an anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

Next, in Step Four, the ALJ determined plaintiff's RFC.  The ALJ found that plaintiff has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: she cannot climb ladders, ropes, or scaffolds and can occasionally climb ramps and stairs. She can occasionally stoop, kneel, crouch, and crawl. She needs to use a cane or other handheld assistive device when ambulating or standing but would have the other hand free to carry small items. She must avoid concentrated exposure to pulmonary irritants such as dust, fumes, and gases. She is limited to work involving occasional interaction with the public. For a few minutes once

6

per hour, she needs to change positions while remaining at the work station and staying on task. [Tr. 18.] As part of this determination, the ALJ found that the objective evidence does not corroborate the plaintiff's allegations.

Based on this RFC determination, the ALJ determined plaintiff is unable to perform her past work as a nurse aid or production welder.

At Step Five, the ALJ analyzed whether plaintiff can successfully adjust to other work. The ALJ relied on vocational expert ("VE") testimony to determine whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and RFC. The VE testified the plaintiff would be able to perform the requirements of other jobs, including document preparer, addresser, and ad clipper paster. The ALJ then found these jobs exist in significant numbers in the national economy and concluded plaintiff is not disabled.

**IV.  Standard of Review**

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is less than a preponderance of the evidence but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the [Commissioner's] findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (alteration in original) (*quoting Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987)). The Court must also consider

7

any evidence that fairly detracts from the Commissioner's decision. *Id.* "[I]f there is substantial evidence on the record as a whole, [the Court] must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992). In reviewing whether the ALJ's decision was supported by substantial evidence, this Court does not substitute its own judgment for that of the ALJ—even if different conclusions could be drawn from the evidence, and even if this Court may have reached a different outcome. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

**V.    Discussion**

Plaintiff contends that the ALJ's decision should be reversed for two reasons. First, plaintiff argues that the ALJ's RFC did not properly explain her maximum remaining ability to stand. Second, plaintiff argues that the ALJ's analysis regarding SSR 16-3 was not supported by substantial evidence.

**A.    The RFC**

The RFC is "the most a claimant can still do despite his or her physical or mental limitations." *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004) (internal quotes omitted). The ALJ bears the primary responsibility for assessing the RFC based on all of the relevant evidence. *Pearsall v. Massanari*, 274 F.3d 1211 (8th Cir. 2001). An RFC determination will only be upheld if it is supported by substantial evidence of record. *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

The ALJ's original RFC from his 2021 decision included the following: "The claimant must change positions for a few minutes every hour while remaining at the workstation and staying on task." [Tr. 135.)  The Appeals Council remanded that decision and found the ALJ failed to specify

> the frequency of the claimant's need to change between sitting and standing nor the length of time needed to remain in the alternate position. Social Security Ruling 96-9p requires the residual functional capacity assessment to be specific as to the frequency of the need to alternate sitting and standing and the length of time needed to stand.

[Tr. 150.]

On remand, the ALJ again found that plaintiff could perform a range of sedentary work and noted the following: "For a few minutes once per hour, she needs to change positions while remaining at the work station and staying on task."  [Tr. 18.]

Plaintiff argues that the ALJ did not follow the Appeals Council's instructions and that the RFC is impermissibly vague as a result.  A vague RFC justifies remand for clarification. In *Remme v. Kijakazi*, for example, the ALJ stated that the plaintiff was required the "opportunity to change positions approximately every 30 minutes." No. CV 22-0953 (JRT/ECW), 2023 WL 4947375, at *2 (D. Minn. Aug. 3, 2023).  The court held that such a requirement "was vague and could be interpreted to mean either that 'Plaintiff is permitted to change positions every 30 minutes or less' or that 'Plaintiff can only change positions every 30 minutes.'"  *Id.*  The court remanded the matter back to the ALJ for clarification.

9

If the Appeals Council believed that the first RFC's statement on position-shifting was vague, it is hard to see how the second RFC's statement clarified matters. It appears that the ALJ merely changed the syntax of the sentence and provided no further information about the length of time needed to stand.  The government responds that the vocational expert further explained that positional changes of "basically twice an hour, once every thirty minutes would be tolerated generally" to maintain full-time competitive employment work. [Tr. 84-85.]  The government thus contends that the vocational expert's answer to the hypothetical question constitutes substantial evidence supporting the ALJ's decision.  *See Milam v. Colvin*, 794 F.3d 978, 985-86 (8th Cir. 2015).  But that hypothetical does not actually reflect the requirement included in the RFC.  The hypothetical was important: SSR 96-9p, which the Appeals Council cited as requiring specificity on remand, states that the specific amount of time needed to stand during a sit/stand option would impact the "extent of the erosion" of the sedentary job base.  SSR 96-9p, 1996 WL 374185, at *7 (Soc. Sec. Admin. July 2, 1996).  Moreover, the government does not address the fact that the ALJ appears to not address the Appeals Council's order by providing specificity as to the frequency and duration of plaintiff's need to occasionally stand. The RFC indicates she needs only change position for a "few minutes" while remaining at the workstation, but the Appeals Council indicated this might include standing up for some duration.  This Court will remand the matter to the ALJ for clarification in accordance with Social Security Ruling 96-9p.

B.     **Plaintiff's subjective statements**

Plaintiff next takes issue with the ALJ's evaluation of plaintiff's subjective statements. At her initial hearing, in March 2021, Travis testified she needed to lie down for 20-to-30 minutes two-to-three times per day due to her back pain. [Tr. at 59]. At her more recent hearing, in November 2022, Travis testified her pain had "progressed" since her prior hearing [Tr. at 74], so she now spends 60% of her day lying down with an orthopedic pillow. [Tr. at 80-81].

The ALJ found that Travis's subjective reports were inconsistent with the evidence of record. [Tr. at 20]. He found there was "no evidence" supporting her need to lie down for 60% of the day. [Tr. at 20]. Plaintiff complains that none of the reasons offered by the ALJ to reject Travis's reported need to lie down were sufficient.

The ALJ noted objective findings and observations as follows:  plaintiff had normal gait and ambulation in September 2018; no tenderness and normal ambulation and strength in February 2019; normal gait in July 2019; moderate pain, no weakness, and no issues walking in August 2019; and a negative MRI of the lumbar spine also in August 2019. The treating neurosurgeon recommended a sacroiliac injection for diagnostic purposes. Plaintiff reported 100% pain relief for two hours after the injection, and the examiner advised she was a good candidate for a left sacroiliac fusion.  She underwent the fusion surgeon in December 2019.  She returned to her surgeon six weeks later and said her symptoms were worse.  In March 2020, CT imaging of the pelvis showed postoperative changes of the left sacroiliac joint and good placement of

11

hardware, and plaintiff's doctor said there was no known cause for her severe complaints of pain, noting that an MRI of the lumbar spine was also normal. Plaintiff continued to have unremarkable exams and a normal nerve conduction study in May 2020; she joined her husband on a 10-day road trip in a semi-truck in July 2020. In August 2020, plaintiff cared for her two grandchildren because their mother was on bedrest. Treatment records showed little treatment for back or hip pain in 2021.

During a consultative examination in April 2022, plaintiff had an asymmetric, slow, unsteady, antalgic, limping gait, but did not present with an assistive device and reported that her grandson had broken her cane. Strength was 4/5 in the left hip and left leg flexion but was otherwise normal (5/5). She reported occasional numbness and tingling of the left leg, but a sensory examination was normal. In August 2022, plaintiff reported muscle spasms in the neck and was referred to a pain clinic. The pain clinic noted tenderness in the mid-cervical spine and paraspinal muscles, marked tenderness at the occipital region, and tenderness in the trapezius, but she had a full range of motion of the shoulders, no limp, and Plaintiff did not use an assistive device. An MRI of the lumbar spine showed multilevel degenerative changes including mild to moderate left L4-5 neuroforaminal stenosis slightly progressed from prior imaging, and in October 2022, an examination noted tenderness at L4-S1 and decreased strength and sensation in the left lower extremity with a deliberate gait but no assistive device.

The ALJ also considered evidence regarding plaintiff's activities and abilities in assessing the supportability and consistency of her allegations [Tr. 25]. For instance, the

ALJ noted evidence regarding plaintiff's abilities to clean, cook, care for her grandchildren, and take long road trips with her husband [Tr. 25, 406-10, 635, 698, 711].

Ultimately, the ALJ concluded that "Following the surgery, [plaintiff] received conservative treatment with injections, medications, and home exercises. Her neurosurgeon found no cause for the ongoing symptoms based on imaging and a nerve conduction studying showed now polyneuropathy or radiculopathy." [Tr. 26.]

Plaintiff has the burden to prove the limitations she claims should be contained in the RFC. *See Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021). The evaluation of plaintiff's alleged symptoms rests with the ALJ, and "[a]s long as the ALJ cite[s] substantial, legitimate evidence to support his factual conclusions, we are not to second-guess." *Ulman v. Comm'r of Soc. Admin.,* 693 F.3d 709, 713–14 (6th Cir. 2012). This evaluation requires consideration of objective medical and other evidence, as well as factors listed in 20 C.F.R. § 404.1529(c)(3), 416.929(c)(3). See SSR 16-3p, 2016 WL 1119029, at *4-9. However, an ALJ is not required to discuss every piece of evidence, nor is he required to discuss every possible factor for evaluating subjective complaints. *See Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004). The ALJ may discount complaints if they are inconsistent with the evidence as a whole. *See Chaney v. Colvin*, 812 F.3d 672, 677-78 (8th Cir. 2016); *Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014). An ALJ is in a better position to evaluate allegations, and the court will defer to that evaluation when it is supported by good reasons and substantial evidence. *Id*. at 994.

13

Plaintiff objects to the ALJ's consideration of her activities, alleges that the ALJ failed to consider difficulty in performing her activities, and alleges that such "minimal activities" are not inconsistent with her with her reported pain and need to lie down. [*See* Doc. 10 at 16-16.] However, this evidence supports the ALJ's conclusion that plaintiff's allegations were not entirely consistent. *See, e.g.*, *Thomas v. Berryhill*, 881 F.3d 672, 676 (8th Cir. 2018) ("[Plaintiff's] activities—caring for her young son, preparing his meals, doing housework, shopping for groceries, handling money, watching television, and driving a car when necessary, among other things—showed that she could work."); *Roberson v. Astrue*, 481 F.3d 1020, 1025 (8th Cir. 2007) (caring for eleven-year-old child, driving, fixing simple meals, doing housework, and shopping for groceries held to be "extensive daily activities" that did not support claimant's alleged inability to work). Although activities such as light housework and visiting with friends are not alone sufficient to discredit subjective complaints, the extent of plaintiff's physical activities when considered in conjunction with the medical record in this case, supports the ALJ's decision. *See Milam*, 794 F.3d at 985.

Notably, plaintiff does not address this argument in her reply brief, and thus this argument appears to have been abandoned. Regardless, this Court concludes that the ALJ properly determined that the medical evidence does not support the severity of plaintiff's alleged limitations, including the inability to stand, walk, or sit as alleged by plaintiff, the need to change positions as frequently as alleged, the need to lie down for 60% of the day, or to elevate her legs when seated [Tr. 20]. *See* 20 C.F.R. §§

14

405.1529(c)(2), 416.929(c)(2) (SSA will consider objective evidence); SSR 16-3p ("[O]bjective evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effect those symptoms may have on the ability to perform work-related activities.").

## VI.   Conclusion

This Court will remand this matter to the ALJ for clarification of the RFC in accordance with Social Security Ruling 96-9p, as explained in Section V.A above. This Court denies plaintiff's petition with respect to her argument pertaining to the evaluation of plaintiff's subjective statements.

Accordingly,

**IT IS HEREBY ORDERED** that the relief which plaintiff seeks in her complaint is **GRANTED in part**. The Court **GRANTS** plaintiff's request for remand and rehearing with respect to clarification of the RFC as described herein.

**IT IS FURTHER ORDERED** that the Commissioner's decision is **REVERSED and REMANDED** for further proceedings consistent with this Order.

**IT IS FURTHER ORDERED** that plaintiff shall have thirty (30) days from the entry of Judgment for which to submit an application for an award of fees and other expenses pursuant to 28 U.S.C. § 2412(d)(1)(B).

Dated this 12th day of December, 2024.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE